UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARLOS EDWARD FLORES, | No. ED CV 16-1020-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 17, 2016, seeking review of the Commissioner's denial of his application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 16, 2016, and June 22, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on January 10, 2017, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on December 7, 1961. [Administrative Record ("AR") at 24. 177.] He has no past relevant work experience. [AR at 24.]

On May 10, 2012, plaintiff protectively filed an application for SSI payments, alleging that he has been unable to work since January 1, 2004. [AR at 16, 177.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 16, 137.] A hearing was held on May 1, 2014, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 31-48.] A vocational expert ("VE") also testified. [AR at 44-46.] On September 12, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from May 10, 2012, the date the application was filed. [AR at 16-26.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 10-12.] When the Appeals Council denied plaintiff's request for review on April 5, 2016 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 10, 2012, the application date. [AR at 18.] At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [H]pertension; status-post mitral valve replacements in 1999 and 2003; ejection fraction of about 45 percent, with dilated left ventricle and global hypokinesis; hepatitis C; degenerative changes of the thoracic spine; and degenerative joint disease of the lumbar spine.

[Id.] The ALJ found that plaintiff's thoracic osteomyelitis, and early degenerative disc disease of the cervical spine at the C4-C5 level, were non-severe.[1] [AR at 18-19.] At step three, the ALJ

---

[1] The Court notes that the ALJ appears to have included MRI evidence of "multilevel mild degenerative changes of the thoracic spine with disc prolapse" in his discussion of plaintiff's non-severe impairments. [See AR at 18-19.] This appears to be inconsistent with his finding that plaintiff had the severe impairment of "degenerative changes of the thoracic spine." [AR at 18.]
(continued...)

4

determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 20.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 416.967(b),[3] except he can perform frequent postural activities, and he can frequently climb ladders, ropes, or scaffolds. [AR at 21.] At step four, the ALJ determined that plaintiff has no past relevant work. [AR at 24.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "garment sorter" (Dictionary of Occupational Titles ("DOT") No. 222.687-014), "usher" (DOT No. 344.677-014), and "parking lot signaler" (DOT No. 915.667-014). [AR at 25, 45.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since the application date of May 10, 2012. [AR at 25.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he determined plaintiff's RFC. [JS at 4.] As set forth below, the Court agrees with plaintiff, and remands for further proceedings.

---

[1](...continued)
It is also inconsistent with a March 4, 2014, report finding -- based on an MRI -- that plaintiff had *severe* degenerative joint disease at T8-T9. [AR at 639.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

## A. LEGAL STANDARD

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating

6

doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**B.   ANALYSIS**

Plaintiff underwent two consultative examinations. First, on October 17, 2012, Seung Ha Lim, M.D., examined plaintiff. [AR at 392-95.] He noted plaintiff's prior gall bladder surgery in 2011, mitral valve replacement surgeries in 1999 and 2003, and history of hepatitis C. [AR at 392, 395.] He determined that plaintiff could perform medium work, as he could lift/carry up to 50 pounds occasionally and 25 pounds frequently; stand/walk for up to six hours of an eight-hour workday; and sit for up to six hours of an eight-hour workday. [AR at 395.] On June 20, 2013, plaintiff underwent a second consultative examination, this time with Azizollah Karamlou, M.D. [AR at 452-56.] Dr. Karamlou also noted plaintiff's history of mitral valve disease, and also opined that plaintiff could lift/carry up to 50 pounds occasionally and 25 pounds frequently; stand/walk for up to six hours of an eight-hour workday; and sit for up to six hours of an eight-hour workday. [AR at 455.]

The record also contains the opinions of two non-examining state agency physicians. First, on October 30, 2012, P. Frye, M.D., considered plaintiff's cardiac and liver impairments and determined that he could perform medium work. [AR at 70-72.] On July 12, 2013, F. Kalmar, M.D., also noted plaintiff's history of heart and liver impairments, and also opined that plaintiff could perform medium work. [AR at 85-87.]

The ALJ noted "more recent treatment records," which had not been reviewed by the consulting or examining physicians, showing degenerative changes of plaintiff's spine [AR at 24]:

> There was objective evidence in the medical record that [plaintiff] was evaluated and/or treated for thoracic osteomyelitis, and early degenerative disc disease of the cervical spine at the C4-C5 level. However, these conditions were managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance.
>
> Computerized tomography (CT) scan of the thoracic spine dated July 13, 2013, revealed bony erosion at the T8-T9 level, suspicious for diskitis/osteomyelitis. A CT scan of the abdomen and pelvis also revealed bony destructive changes with

>surrounding edema at the T8-T9 level. Two weeks later, [plaintiff] sought emergency room treatment secondary to back pain. He admitted intravenous drug abuse.
>
>The findings from the physical examination included musculoskeletal weakness in the bilateral biceps, triceps, patella, and Achilles reflex; decreased sensation in the dorsal aspect of the shin of the right lower extremity; and pain throughout the whole back. Magnetic resonance imaging (MRI) of the thoracic spine revealed findings consistent with an acute osteomyelitis diskitis at the T8-T9 level with epidural phlegmon causing compression of the ventral aspect of the thecal sac, and multilevel mild degenerative changes of the thoracic spine with disc prolapse.
>
>A CT scan performed on August 13, 2013, revealed paravertebral soft tissue swelling and evidence of osteomyelitis. A biopsy of bone lesion at the T9-T10 level revealed benign fibrotic lesion, probably reactive to osteomyelitis. [Plaintiff] was treated with intravenous antibiotics, through a peripherally inserted central catheter (PICC), and he was monitored for infection. He was discharged from the hospital with instructions to follow up for home health, continue his intravenous medications at home, and he was counseled regarding the importance of not using intravenous drugs. Subsequent notes showed [plaintiff] developed a PICC line infection in October of 2013. However, this condition and the osteomyelitis resolved within 12 months.[4]
>
>With respect to the degenerative changes of the cervical spine, there was no evidence of a recommendation or anticipated treatment for this condition. Radiographic imaging of the cervical spine dated February 18, 2014, revealed early degenerative disc disease at C4-C5.
>
>. . . .
>
>Last, the treatment records documented complaints of back pain. The findings from the physical examinations included bilateral paravertebral tenderness, but normal gait and no focal deficits. Radiographic imaging of the lumbar spine dated February 18, 2014, revealed degenerative disc disease involving the L1-L2 and L5-S1 levels. Imaging studies of the thoracic spine revealed changes at the T10 vertebral body, and findings in the lower thoracic spine suggesting old trauma. Last, an MRI scan of the thoracic spine dated March 4, 2014, revealed destructive changes at the T8-T9 level with severe chronic-appearing height loss of the T8 and T9 vertebral bodies; and a broad-based disc bulge/osteophyte complex at the T8-T9 level with mild narrowing of the central canal, and moderate-to-severe foraminal stenosis bilaterally.

[AR at 18-19, 23 (citations omitted).]

In support of his RFC determination that plaintiff was limited to light work, the ALJ stated the following:

---

[4] The ALJ provided no citation for this statement; neither does the Court find evidence in the record to support this statement, nor does defendant provide a persuasive citation to the record for this proposition. [See JS at 14 (citing AR at 636 for the proposition that there was "no discussion or evidence of osteomyelitis" on an April 8, 2014, treatment note).]

> In determining [plaintiff's] residual functional capacity, the undersigned considered all the opinions of record including those from the consultative examiners and the State agency physicians. However, the undersigned finds that these assessments are not restrictive enough given the totality of the evidence. Specifically, the more recent treatment records showed degenerative changes of the lumbar spine and thoracic spine, and a continued ejection fraction in the range of 40 to 50 percent.[5] Thus, the undersigned finds that a limitation to light-exertion work is more appropriate. The undersigned notes there is no medical source statement from any source that suggests functional limitations more restrictive than the residual functional capacity found in this decision, nor is there any medical source statement of functional limitations from any treating source.

[AR at 24 (citations omitted).]

Plaintiff argues that there is no evidence -- let alone substantial evidence -- to support the ALJ's RFC assessment limiting plaintiff to light work. [JS at 9.] He contends that the "absence of any treating opinion is of no moment given that the primary function of medical records is to promote communication and recordkeeping for health care personnel -- not to provide evidence for disability determinations." [JS at 11 (quoting Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007)).] Plaintiff concedes that the opinions of the consultative examiners and the state agency reviewing physicians "may constitute substantial evidence as to [plaintiff's] ability to work prior to the onset of the thoracic osteomyeltis . . . as of June 2013," but argues that "a reasonable person [as of June 2013] would not accept their opinions because they did not have an opportunity to consider all of the impairments individually and in combination with one another in formulating a medical source statement as to [plaintiff's] work restrictions." [Id.] He further contends that the ALJ's assessment limiting plaintiff to light work is improper because it is based on the ALJ's "own analysis of the raw medical data in functional terms." [JS at 9-10.] He submits that in light of plaintiff's more recent spinal problems, the ALJ should have recontacted the treating providers, ordered an updated consultative examination, or called a medical expert to testify at the hearing, but "instead, undertook the one path that was not permitted, which was to formulate an RFC

---

[5] An ejection fraction "is a measurement of how well a heart is pumping out blood." A normal ejection fraction is between 50 and 70 percent, and an ejection fraction between 41 and 49 may indicate the development of heart failure or indicate damage from a previous heart attack. [JS at 8 n.6 (citations omitted).]

9

based on his analysis of the medical evidence for which he was not qualified."[6] [JS at 10.] Instead, after noting that there was no medical source who opined that plaintiff was any more restricted, and that the consulting providers did not have the opportunity to address the impact of plaintiff's later back issues, the ALJ unilaterally made the determination -- based on his review of plaintiff's records showing "destructive changes at the T8-T9 level with severe chronic-appearing height loss of the T8 and T9 vertebral bodies; and a broad-based disc bulge/osteophyte complex at the T8-T9 level with mild narrowing of the central canal, and moderate-to-severe foraminal stenosis bilaterally"; "early degenerative disc disease of the cervical spine at the C4-C5 level"; and degenerative disc disease at L1-L2 and L5-S1; as well as a diagnosis of osteomyelitis and complaints of severe back pain -- that plaintiff should be limited to light work. [JS at 11.] Plaintiff contends that because substantial evidence does not support the ALJ's RFC determination, he should be awarded benefits as of June 2013, or that the matter should be remanded for further administrative proceedings to correct the ALJ's errors. [Id.]

Defendant responds that the ALJ took into consideration plaintiff's "recent treatment records demonstrating degenerative changes of the lumbar and thoracic spine in determining the limitations in the RFC," and that substantial evidence supported the RFC determination "because the ALJ considered the entire record and grounded the RFC finding in both the objective medical evidence and an analysis of the credibility of Plaintiff's subjective complaints." [JS at 13 (citations omitted).] Defendant also appears to rely on the ALJ's unsupported statement that plaintiff's osteomyelitis had resolved [JS at 14 (citation omitted); but see supra note 4], and on the fact that an April 8, 2014, treatment note "revealed no discussion or evidence of osteomyelitis." [Id. (citing AR at 636); see also supra note 4.]

After reviewing the record, the Court finds that substantial evidence does not support the ALJ's determination to limit plaintiff to light work. Since approximately June 2013, plaintiff has complained of severe back pain, and has undergone testing at different levels of his spine, which

---

[6] Plaintiff notes that if he was found to be limited to sedentary work, a finding of disability would have resulted due to the fact that he has a limited education, no past relevant work history, and was "closely approaching advanced age" as of December 7, 2011. [JS at 10.]

has revealed problems ranging from "early" to "severe" degenerative disc disease depending on the level involved [see, e.g., AR at 639], as well as the diagnosis of osteomyelitis (for which, contrary to the ALJ's statement and the Commissioner's argument, there is *no* affirmative evidence in the record of being resolved). An ALJ may not substitute his lay opinion (here, in unilaterally finding that the *absence* of evidence of functional limitations after plaintiff was determined to have osteomyelitis, as well as *severe* degenerative disc disease of the thoracic spine [see supra note 1], degenerative disease of the lumbar spine at L1-2 and L5-S1, and early degenerative disc disease of the cervical spine at C4-C5 [see AR at 639], warranted a limitation to light work), for that of a professional. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater RFC based on claimant's testimony that he took a road trip; there was no medical evidence to support the ALJ's determination); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (noting that an ALJ "'must not succumb to the temptation to play doctor and make [his] own independent medical findings'") (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record)). This is exactly what the ALJ did here.

Remand is warranted on this issue.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ's RFC determination was not supported by substantial evidence, the ALJ on remand shall reconsider the functional limitations resulting from all of plaintiff's cervical, thoracic, and lumbar issues, whether considered by the ALJ in the instant decision to be severe or non-severe, along with his other impairments. 20 C.F.R. § 416.945(e) (" When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). To facilitate this, the ALJ shall obtain additional information of plaintiff's functional limitations resulting from all of his spinal issues from plaintiff's treating sources, and/or order a consultative examination(s) with the appropriate examiner(s) being provided with all of plaintiff's medical records, and/or call a medical expert, who has been provided with all of plaintiff's medical records, to testify at the hearing. In assessing the medical opinion evidence, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one source's opinion over any of the others. Next, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.[7] Finally, the ALJ shall reconsider all of plaintiff's limitations

---

[7] Although plaintiff did not specifically raise the issue of the ALJ's credibility determination, in response to the Commissioner's argument that the ALJ properly evaluated his credibility, plaintiff notes that the ALJ's reference to plaintiff's "somewhat normal level of daily activity" [JS at 18 (citing AR at 22)], relied on activities that plaintiff took part in "prior to the onset of his severe orthopedic impairments." [Id. (citing AR at 449, 471).] Thus, plaintiff's subjective symptom testimony will need to be reconsidered in light of the ALJ's review on remand of the medical evidence. The Court notes that on March 28, 2016, after the ALJ's assessment in this case, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of
(continued...)

in making the RFC determination and should determine at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 24, 2017

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[7](...continued)
subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id. SSR 16-3p shall apply on remand.